IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

JOSEPH R. PETTIT,

          Plaintiff,

v.                                      CIVIL ACTION NO. 2:18-cv-00472

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, et al.,

          Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Plaintiff Joseph R. Pettit's motion to remand.[1] (ECF No. 11.)

For the reasons discussed more fully below, the Court **GRANTS** the motion.[2]

*I.    BACKGROUND*

---

[1] Also pending before the Court is Defendant State Farm Mutual Automobile Insurance Co.'s and Defendant Angela Cooke's individual motions to stay and motions to dismiss. (ECF Nos. 3, 6, 16, 18.) As this opinion is remanding the case, the Court **DENIES AS MOOT** those motions. (ECF Nos. 3, 6, 16, 18.)

[2] The Court notes that motions to remand, virtually identical to the present motion, are currently pending before this Court in *Martin v. State Farm Fire & Casualty Co. et al.*, (2:18-cv-00473, ECF No. 11), and *Schaefer et al v. State Farm Fire and Casualty Company et al*. (2:18-cv-00474, ECF No. 8.) These motions contain the same arguments as the present motion and thus the Court's analysis and ruling on the present motion will apply to those motions as well. However, the Court will enter a separate memorandum opinion and order in each of those cases reflecting the adoption of the Court's ruling in the present motion.

Plaintiff Joseph R. Pettit ("Pettit") is a West Virginia citizen. (ECF No. 1-1 at ¶ 1 (Compl.).) Defendant State Farm Mutual Automobile Insurance Co. ("State Farm") is an Illinois citizen. (*Id.* at ¶ 2.) Defendant Angela Cooke ("Cooke") is a West Virginia citizen. (*Id.* at ¶ 3.)

This case arises from a car accident that occurred on September 23, 2009 involving Pettit ("Pettit") and Mark Lorenz ("Lorenz"), in which Pettit was injured. (*See id.* at ¶¶ 4–10.) Lorenz was insured by Permanent General Assurance Corp. ("PGAC"). (*See* ECF No. 1-1 at ¶ 12.) However, PGAC initially denied coverage for the accident because Lorenz's driver's license was suspended at the time of the accident. (*See id.* at ¶ 14.) Because PGAC initially denied coverage, Pettit made a claim with his insurance agency, State Farm. (*See id.* at ¶ 15.) State Farm subsequently paid Pettit $40,000 for his claim, which reflected the $20,000 per person limit on each of his two insurance policies with State Farm. (*See id.* at ¶17.) These policies included uninsured motorist ("UM")/underinsured motorist ("UIM") coverage. (*See* ECF No. 12 at 2.) PGAC subsequently agreed to pay its liability coverage limit of $15,000 to Pettit for the accident. (*See* ECF No. 1-1 at ¶ 12–19.)

Despite the payouts from State Farm and PGAC, Pettit alleges that he was not made whole and that, as a result, he is entitled to collect UM/UIM benefits from State Farm, inasmuch as Lorenz was an uninsured/underinsured motorist at the time of the accident. (*See id.* at ¶¶ 19–20.) On October 24, 2017, Pettit filed the present action against State Farm alleging that State Farm failed to make a commercially reasonable offer of UIM coverage and against Cooke based on her handling of his insurance claim and the allegedly false representations she made regarding the UIM coverage. (*See id.* at ¶¶ 22, 48.) Specifically, Pettit alleges claims for Breach of Contract

(Count I) and Common Law Bad Faith (Count II) against State Farm and a claim for Unfair Trade Practices (Count III) against Cooke.

On March 23, 2018, State Farm removed the case to this Court. (ECF No. 1.) Pettit subsequently filed the present motion to remand on April 19, 2018, (ECF No. 11), to which State Farm timely responded, (ECF No. 21), and Pettit timely replied. (ECF No. 24.) As such, the motion is fully briefed and ripe for adjudication.

## II. LEGAL STANDARD

Article III of the United States Constitution provides, in pertinent part, that "[t]he judicial Power shall extend . . . to Controversies . . . between Citizens of different States." U.S. Const. art. III, § 2. "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1).

Congress provided a right to remove a case from state to federal court under 28 U.S.C. § 1441. This statute states, in relevant part:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a state court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a). Because removal of civil cases from state to federal court infringes state sovereignty, federal courts strictly construe the removal statute and resolve all doubts in favor of remanding cases to state court. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 109 (1941); *see also Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994)

("Because removal jurisdiction raises significant federalism concerns, we must strictly construe removal jurisdiction." (citation omitted)).

The Supreme Court has long "read the statutory formulation 'between . . . citizens of different States'" in Section 1332(a)(1) "to require complete diversity between all plaintiffs and all defendants." *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) (citing *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996)). "[T]he 'complete diversity' rule clarifies that the statute authorizing diversity jurisdiction over civil actions between a citizen of a state where the suit is brought and a citizen of another state permits jurisdiction only when no party shares common citizenship with any party on the other side." *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999) (citation omitted). "This . . . rule . . . makes it difficult for a defendant to remove a case if a nondiverse defendant has been party to the suit prior to removal." *Id.*

"There are, however, certain limited exceptions to the complete diversity requirement." *Mansfield v. Vanderbilt Mortg. & Fin., Inc.*, 29 F. Supp. 3d 645, 651 (E.D.N.C. 2014). One such exception is fraudulent joinder. The fraudulent joiner standard is well settled, and the Fourth Circuit lays a "heavy burden" upon a defendant claiming fraudulent joinder. *Johnson v. Am. Towers, LLC*, 781 F.3d 693, 704 (4th Cir. 2015) (quoting *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 424 (4th Cir. 1999)). To establish that a nondiverse defendant has been fraudulently joined, the removing party must establish either: "[t]hat there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or [t]hat there has been outright fraud in the plaintiff's pleading of jurisdictional facts." *Mayes*, 198 F.3d at 464 (quoting *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir. 1993)).

### III. DISCUSSION

In his motion for remand, Pettit argues that removal was improper because there is not complete diversity as he and one of the defendants, Cooke, are both residents of West Virginia. (*See* ECF No. 12 at 8.) However, in its response to the motion, State Farm argues that removal was proper because Cooke was fraudulently joined. (*See* ECF No. 21 at 4–6.) Specifically, State Farm asserts that Pettit has no possible cause of action against Cooke because Pettit's claim against her is barred by the statute of limitations. (*See id.*)

This Court has held that "fraudulent joinder claims are subject to a rather black-and-white analysis in this circuit. Any shades of gray are resolved in favor of remand." *Morrison v. Standard Ins. Co.*, No. 2:10–CV–0156, 2010 WL 3703036, *4 (S.D. W. Va. Sept. 16, 2010). Furthermore, the Court is mindful of the Fourth Circuit's recognition that permitting "extensive litigation of the merits of a case while determining jurisdiction thwarts the purpose of jurisdiction rules," *Hartley*, 187 F.3d at 425, and direction to "minimize threshold litigation over jurisdiction," *id.*

"[A] defendant asserting a fraudulent joinder claim predicated on a limitations defense faces a nearly insurmountable challenge. Put simply, although fraudulent joinder may apply in cases where the statute of limitations has run against a non-diverse defendant, '[i]f the statute of limitations issue is difficult to determine, the doctrine of fraudulent joinder is not appropriate, and the case should be remanded to the state court.'" *See Morrison*, 2010 WL 3703036, at *7 (quoting *Shaffer v. Nw. Mut. Life Ins. Co.*, 394 F.Supp.2d 814, 818 (N.D. W. Va. 2005)).

In West Virginia, courts apply the following five-step analysis to determine whether a cause of action is barred by the statute of limitations:

> First, the court should identify the applicable statute of limitation for each cause of action. Second, the court (or, if questions of material fact exist, the jury) should

5

identify when the requisite elements of the cause of action occurred. Third, the discovery rule should be applied to determine when the statute of limitation began to run by determining when the plaintiff knew, or by the exercise of reasonable diligence should have known, of the elements of a possible cause of action . . . . Fourth, if the plaintiff is not entitled to the benefit of the discovery rule, then determine whether the defendant fraudulently concealed facts that prevented the plaintiff from discovering or pursuing the cause of action. Whenever a plaintiff is able to show that the defendant fraudulently concealed facts which prevented the plaintiff from discovering or pursuing the potential cause of action, the statute of limitation is tolled. And fifth, the court or the jury should determine if the statute of limitation period was arrested by some other tolling doctrine. Only the first step is purely a question of law; the resolution of steps two through five will generally involve questions of material fact that will need to be resolved by the trier of fact.

*Dunn v. Rockwell*, 689 S.E.2d 255, 262 (W. Va. 2009).

As to the first step of the analysis, generally, the statute of limitations for bringing a claim under the West Virginia Unfair Trade Practices Act ("UTPA") is one year. *See Wilt v. State Auto. Mut. Ins. Co.*, 406 S.E.2d 608, 609 (W. Va. 1998). However, there is a genuine issue of material fact as to steps two and three—when the requisite elements of the cause of action occurred and whether the discovery rule applies. Here, Cooke provided Pettit with the UM/UIM offer form in October 2009. (*See* ECF No. 21 at 7.) State Farm argues that, at the time Cooke provided the offer form, Pettit and his counsel knew that the UM/UIM coverage under each policy was $20,000 and thus had all the information necessary to bring a cause of action based on the UM/UIM coverage amount. (*See id.*) State Farm further asserts that Cooke settled Pettit's claim from the accident in December 2009, which ended Cooke's involvement in the claim. (*See id.*) Thus, at the latest, State Farm argues, the statute of limitations on Pettit's claim began to run in December 2009.

Pettit, however, alleges that State Farm and Cooke misrepresented material facts regarding the amount of the UM/UIM coverage available and Pettit did not discover this misrepresentation until 2016 when he learned of the problems with State Farm's UM/UIM selection/rejection forms. (*See* ECF No. 1-1 at ¶¶ 31, 61.)  Pettit further alleges that he could not by exercise of reasonable diligence have known of the same prior to that time because State Farm concealed those facts. (*See id.* at ¶ 61.)  Thus, Pettit argues, the statute of limitations on his UTPA claim against Cooke was tolled by the discovery rule.  (*See id.* at 5–6.)

The parties clearly dispute the date on which Pettit should have known of the elements of his UTPA cause of action against Cooke.  If Pettit's allegations regarding the misrepresentations and concealment are true, then it is possible that Pettit would not have known by the exercise of reasonable diligence of the elements of the possible cause of action in this case until well after 2009.  Thus, it is possible that Pettit is entitled to the benefit of the discovery rule.  *See Ash v. Allstate Ins. Co.*, No. 5:10-cv-5, 2010 WL 3788045, at *4 (N.D. W. Va. Sept. 23, 2010).  This is a genuine issue of material fact that, as stated above, the West Virginia Supreme Court of Appeals has stated should be resolved by the trier of fact.  *See Dunn*, 689 S.E.2d at 262.

Furthermore, this District has held that, "[i]nsomuch as the Supreme Court of Appeals of West Virginia has recognized a number of equitable modifications regarding the statute of limitations, . . . the court cannot conclude that without a doubt" a plaintiff's claims are precluded by the statute of limitations.  *See Morrison*, 2010 WL 3703036, at *7 (rejecting defendant's fraudulent joinder argument because, inter alia, where West Virginia has "recognized a number of equitable modifications regarding the statute of limitations," the court could not conclude "without a doubt" that plaintiff's claims were barred by the statute of limitations).  As there is a "glimmer

7

of hope" that the statute of limitations was tolled on Pettit's claim, Pettit has a possible UTPA claim against Cooke. Accordingly, this Court must remand this civil action to the Circuit Court of Kanawha County, West Virginia.

## IV. CONCLUSION

For the reasons discussed more fully herein, the Court **GRANTS** Pettit's motion to remand, (ECF No. 11), and **REMANDS** the case to the Circuit Court of Kanawha County, West Virginia. The Court further **DIRECTS** the Clerk to remove this matter from the Court's docket.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: October 10, 2018

_____
THOMAS E. JOHNSTON, CHIEF JUDGE